SAMUEL HAYWARD & another *vs.* EPHRAIM HAPGOOD & others.

The court have no power, under Rev. Sts. *c.* 100, §§ 21, 22, and *St.* 1836, *c.* 273, to allow a bill in equity to be substituted for a count in contract, in an action at law commenced before the passage of *St.* 1853, *c:* 371, giving equitable remedies in suits at law.

A joint maker of a note payable on demand, on paying the amount thereof, may commence an action against the heirs of his co-debtor, on Rev. Sts. *c.* 70, §§ 13 *& seq.*, at any time within one year after such payment, although the payment was made after the final settlement of the deceased's estate by his executor or administrator, and after the expiration of the time limited for the commencement of actions against the latter.

ACTION OF CONTRACT against four out of five of the heirs of Ephraim Hapgood, who died in February 1849, to recover their share of the sums paid by the plaintiffs on certain promissory notes made by the plaintiffs and said Hapgood jointly, but not as partners, with three other persons, all as principals, in 1847, and payable on demand. The defendant Ephraim Hapgood was duly appointed administrator of his father's estate on the 13th of February 1849, and gave bond and published notice of his appointment within three months afterwards. Said administrator, who resided at Lowell in this county, was never called upon for the payment of these notes; and on the 12th of April 1853, more than four years after his appointment, settled his final account in the probate court, and by the order of that court, and before the commencement of this suit, distributed the balance remaining in his hands among the five heirs at law, who also took by descent from their father real estate of considerable value. In August 1853, after said administrator had settled his final account, and after the time limited for bringing suits against him had expired, the two plaintiffs, who had from time to time paid the interest on said notes, paid the amount due thereon, upon the demand of the holders thereof, each paying one half out of his separate funds. Of the three joint makers of these notes, other than Hapgood and the plaintiffs, one resided out of the Commonwealth, and the other two had no property. That heir of Ephraim Hapgood, who was not joined in this action, resided out of the Commonwealth, but remained the owner of the real estate acquired by descent from his father.

37 *

At the trial, before *Bigelow*, J., the facts above stated were given in evidence, and the plaintiffs moved to amend their writ by striking out the count in contract, and inserting a bill in equity. But the presiding judge refused to allow the amendment, and reported the case to the full court for the purpose of submitting to them that question, and also the general question, what judg-ment the plaintiffs were entitled to upon the facts above stated.

*C. R. Train*, for the plaintiffs.

*J. G. Abbott & B. F. Butler*, for the defendants.

BIGELOW, J. The plaintiffs admit that they cannot maintain a joint action at law against the present defendants under Rev. Sts. *c.* 70, § 13 *& seq.* They therefore seek to amend by chang-ing the present action into a bill in equity, which is the remedy prescribed by § 16 of the same chapter in cases like the present, where more than one person are liable for a debt as heirs, next of kin, devisees or legatees.

It is very clear that the right of the plaintiff to make this amendment is not affected by *St.* 1853, *c.* 371, giving equitable remedies in suits at law, because the present suit, having been commenced before that act took effect, is within the provision of § 5, by which pending actions are expressly excepted from its operation. Nor has the court power, under the Rev. Sts. *c.* 100, §§ 20–22, to allow such an amendment. The provisions in these sections were taken substantially from *St.* 1784, *c.* 28, § 14, and were not intended essentially to change the law, or to give greater powers to the court in granting amendments. *Da-venport* v. *Holland*, 2 Cush. 12. It was always held under that statute that it was not competent for the court to allow amend-ments changing the form of action. *Haynes* v. *Morgan*, 3 Mass, 210. *Ball* v. *Claflin*, 5 Pick. 303. *Guilford* v. *Adams*, 19 Pick. 376. And that no such power was intended to be given by the former statutes is strongly implied in *St.* 1836, *c.* 273, § 3, by which authority was given to the court to permit a party to amend by changing the form of action, in order to adapt it to the nature of his claim. There can be no doubt, therefore, that before the en-actment of the last named statute, the amendment asked for in the present case would have been entirely inadmissible; because,

if a party could not amend so as to change the form of his action at law, *a fortiori* he could not turn it into a bill in equity.

The question is therefore narrowed to the true interpretation of *St.* 1836, *c.* 273, § 3. It is quite obvious that this statute was intended to apply only to actions at law; and although in some cases the term " civil action " is broad enough to include bills in equity and other proceedings in courts of justice, not coming within the strict meaning of a suit at law, it is manifestly used in this statute in its more restricted and technical sense. The terms " special pleading " and " general issue " are properly applicable only to actions at law; and the connection in which they stand in the statute, together with the provision authorizing the courts to make rules to " prevent surprise, and to afford opportunity for preparation for trial," clearly show that the sole purpose of the act was to regulate proceedings in such actions. By the provision therefore in § 3, authorizing the allowance of amendments by changing the form of action, nothing more was intended than to confer an authority on the courts, which by previous decisions had been determined not to exist; so that one form of action at law might be changed to another, in order to adapt the declaration to the nature of the plaintiff's legal claim as it might be disclosed after the commencement of the suit. It is obvious that amendments of this kind only remove technical objections to the declaration, so that the true cause of action may be tried on its merits; but they do not at all affect the substantial rights of parties, or in any degree change or modify the remedy to which they may be entitled as the fruit of an action at law.

But it would be far otherwise if a plaintiff were allowed to change an action at law into a bill in equity, or a bill in equity into an action at law; for one would be equally admissible with the other. That would be to change by amendment not only the form, but the entire nature of the suit; to transfer it to a new, distinct and independent jurisdiction, and to subject the defendant to a wholly different system of administering rights and remedies from that to which he was liable under the original process. We think such was not the intention of the legislature. So great a change in the practice of courts would not have been

eft to implication; and the language of the statute, as we have already said, is strictly applicable only to actions at law.

Besides, the power of allowing amendments is a general authority conferred by the statutes upon the court of common pleas as well as upon this court. No greater authority in this respect is given to one court than to the other. But it is clear that the construction contended for by the plaintiffs would give this court much greater power to allow amendments. The question of the competency of an amendment, such as is asked for in the present case, would then depend on the accidental circumstance that the action was pending in this court, which has a large equity jurisdiction. In the court of common pleas, which has concurrent jurisdiction with this court in most personal actions at law, but possesses no general equity jurisdiction, such an amendment could not be made, because its allowance would take away the jurisdiction of the court. For these reasons, we are of opinion that the amendment was rightly rejected by the presiding judge.

The claim of the plaintiffs against the heirs of the intestate, Ephraim Hapgood, accrued upon payment by them of the debt for which they were jointly liable with him. Until such payment was made, neither of them had any cause of action against the estate of the deceased. It was this payment which created their claim. They were not bound by any legal obligation to the deceased to pay it sooner. The present suit having been commenced within a year from the time of such payment, but after the final settlement of the estate of the deceased, and after the expiration of the time limited for the commencement of actions against the administrator, was seasonably commenced in order to charge the heirs at law, under Rev. Sts. *c.* 70, §§ 13, 14. *Hall* v. *Bumstead*, 20 Pick. 7. *Wood* v. *Leland*, 22 Pick. 503, and 1 Met. 387. Upon making proper amendments, therefore, by striking out parties improperly joined in this suit, one of the two plaintiffs, having paid a part of the debt out of his own separate funds, can recover an aliquot part of the amount so paid by him, so fa as it was the proper debt of the intestate, against one of the defendants, as his heir at law.